IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RAYMOND LATSON,

        Plaintiff,

vs.                                   1:03CV148-SPM/AK

NURSE HAGAN, et al,

        Defendants.

                              /

## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 and is proceeding *pro se* and *in forma pauperis*. In his third amended complaint, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs. (Doc. 27). Defendants Sharon Hagan, Kathleen Rudolph, and Lance Hughes have filed their special report (doc. 38), which has been construed as a motion for summary judgment (doc. 43), with supporting affidavits (doc. 50), and Plaintiff has responded. (Doc. 45). Defendant Janice Spann was not served, despite the Court's efforts to have her served at her last known address (doc. 42), and Defendant Michael Menefee has answered the complaint (doc. 52), but

has not joined in the special report filed by the other defendants or filed his own such report, despite being directed to do so.  (See Docs. 30, 35).

I.      **Allegations of the Third Amended Complaint (doc. 27)**

Plaintiff claims that on May 3, 2003, he injured his left knee and ankle playing football at North Florida Reception Center and went immediately to the emergency room where he alleges Defendant Menefee[1] examined him, ordered x-rays, and determined that he would need to see an orthopedic specialist.  Instead, Plaintiff says he was transferred to Washington CI, where he was unattended for four to five weeks, although he contends that he submitted several sick call requests to Janice Spann.  Finally, Plaintiff claims he was examined by Defendant Lance Hughes, who told him there was no orthopedic specialist there to examine him, and he would have to submit another sick call to Janice Spann.  Plaintiff claims that he submitted several sick call requests to Defendant Hughes, Hagan and Rudolph, but no one responded.  Plaintiff claims that he filed grievances and appealed them to the highest level and was finally sent to RMC to meet with the specialist, but was returned to Washington CI without seeing one.

II.     **Standard of Review**

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-

---

[1] The Court will use the proper spelling of this Defendant's name throughout this report, although Plaintiff listed him in the complaint as Menffue.

moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

### III.     Defendants' Rule 56(e) evidence

  a)     Medical records

A medical entry dated June 10, 2003, shows that Plaintiff declared a medical emergency because he was unable to feel his left foot and ankle, which he said he "twisted in the dorm."  Defendant Hagan noted swelling of the left ankle, but wrote that Plaintiff was belligerent and would not allow her to take his vital signs.  He had a doctor's appointment in two days, so his demands to see the doctor immediately were refused, and he was instructed as to what constituted a medical emergency.  (Doc. 43, Exhibit A-5).  A Fracture/Sprain Assessment was completed at this time by Defendant Hagan and it was determined that Plaintiff should be referred to the physician's assistant.  (Exhibit F-1).

Defendant Lance Hughes examined Plaintiff on June 12, 2003, and found that Plaintiff had crutches and ace bandages that Plaintiff brought with him from NFRC .  Examination revealed "gross laxity," edema, decreased range of motion, and Plaintiff was reissued crutches that fit him better, given additional ace bandages, and given an extra pillow to put under his ankle.  Hughes noted that he had a history of sprain and ordered an x-ray, with instructions to return in 10 days or sooner if it got worse.  (Exhibit A-6).

Plaintiff returned on June 16, 2003, and Hughes wrote that Plaintiff told him he had an MRI at Shands in January that showed damage to his ACL, so Hughes wanted a follow up on the x-rays previously ordered at which time he would consider a consult. (Exhibit A-7).  This medical entry was signed by Senior Physician I. Ciungu, Hughes, and Rudolph.

A medical note dated August 1, 2003, by Defendant Rudolph and J. Spann indicates that Plaintiff had submitted two sick call requests about left knee pain and a CHO decision was needed as to an orthopedic referral.  (Exhibit A-9).  The note says, "for now based on nursing assessment do not recommend orthopedic referral."

A note from CHO/CA Clinic dated August 14, 2003, directs that he "be sent back to RMC for ortho clinic ASAP" due to a sports injury incurred at RMC on May 25, 2003. (Exhibit A-10).

On August 19, 2003, the orthopedic consult was denied by N. Mitchell and Janice Spann because "I/M had no injury to L knee recently."  (Exhibit A-11).

Plaintiff was re-evaluated by CHO/CA Clinic on August 21, 2003, and no swelling was noted and no instability found, but it was recommended that an orthopedic referral be made for an opinion as to issuance of a knee brace.  (Exhibit A-12).

A "Generic Nursing Assessment" completed on July 25, 2003, by Defendant Rudolph resulted in a physician referral for Plaintiff's complaints of left knee and left ankle pain, which he said had been a problem since January.  (Exhibit B-1)

Plaintiff refused this examination stating that he had things to do.  (Exhibit E-1).

The remainder of the medical information provided concerns medical conditions not at issue in this complaint.

b) <u>Affidavit of Sharon Hagan</u>

Defendant Sharon Hagan, a nurse at Washington CI, attests that she examined Plaintiff's left foot and ankle on June 10, 2003, and noted moderate swelling. (Doc. 50). She stated that Plaintiff was belligerent, argumentative, and refused to let her take his vital signs. He already had a doctor's appointment for June 12, 2003, so he was not seen that day. Defendant Hagan noted that she had addressed a number of pass renewals with Plaintiff and treated him for other medical conditions, none of which are related to his ankle and knee.

c) <u>Affidavit of Kathleen Rudolph</u>

Defendant Rudolph treated Plaintiff subsequent to a sick call request for his knee and ankle pain on July 25, 2003. (Doc. 50). She noted no swelling or discoloration of the area, but referred him to a physician. Other treatment of Plaintiff by Rudolph is related to medical conditions not related to his left knee and ankle.

## IV. Plaintiff's Response

Plaintiff offers no evidence, but raises an interesting point in his response that, in the opinion of the undersigned, precludes entry of summary judgment in this matter. Plaintiff argues that the medical records from his original accident were not included in the records provided by the Defendants with the special report. (Doc. 45). Plaintiff also argues that numerous sick call requests related to his left knee and ankle pain were not included in the Defendants' submission, as well as an orthopedic specialist's report.[2]

---

[2] Grievances attached to Plaintiff's amended complaint (doc. 15) show that he made two attempts to obtain his medical record, but his requests were denied on grounds that "[y]ou have not shown an exceptional need."

6

Defendants' own records refer to material not included in their evidentiary submission and otherwise fails to resolve conflicts in the records, which in the Court's opinion, also leaves genuine issues of material fact unresolved.  For example, Plaintiff alleges that Defendant Menefee failed to obtain x-rays when he presented to him at NFRC with an injured knee.  Menefee did not file a special report, as he was directed to do, and the other Defendants have not provided any records from NFRC.  Since Plaintiff claims that he returned to Washington CI with a diagnoses and prescription for continued treatment from NFRC, it would seem relevant to a determination as to the alleged indifference of the staff at Washington to include these records.  Defendant Hughes even referred to Plaintiff's history of sprain and treatment at NFRC (Exhibit A-6), but no records of this prior treatment are available to the Court.  Treatment by medical personnel at Washington could indeed be deemed deliberate indifference if in fact the records of this prior treatment included an orthopedic specialist's report or instructions for follow up x-rays as Plaintiff contends.  Defendant Hughes himself ordered x-rays (Exhibit A-6), but there is no evidence in the records provided by Defendants as to whether they were ever obtained and if so, what the results were.  Defendant Hughes noted that Plaintiff told him about an MRI showing ACL damage, but no MRI is in file, and although Hughes ordered a follow up on the x-rays he ordered previously (see Exhibit A-6), there is nothing in the record to show if that follow up occurred and if so, what the results were.  If Plaintiff's version of the facts is accepted as true, which they must be for purposes of deciding Defendants' motion, then he had severely damaged his knee while at NFRC and no x-rays or other objective tests were made by Defendant Menefee or by the staff at Washington CI, despite his complaints of

pain, and the staff's observations of swelling, decreased range of motion, and other symptoms. Defendants have not offered any proof of treatment at NFRC nor proof of x-rays or other objective tests by the staff at Washington CI that would show that they were not deliberately indifferent to Plaintiff's complaints of injury to his knee. Defendant Hughes noted that Plaintiff reported an ACL injury and an MRI confirming this, but there is no proof before the Court that the MRI was obtained or any proof that Hughes obtained his own x-ray to confirm this injury, even though he ordered one. It appears that Hughes ordered one and then never followed up on it or his recommendation that an orthopedic referral be obtained. In short, the medical records submitted by the Defendants support Plaintiff's version of the facts, *i.e.* that he had a serious injury that was ignored by the Defendants. Further, the medical notes of August 1, 2003 (Exhibit A-9), August 14, 2003 (Exhibit A-10), August 19, 2003 (Exhibit A-11), and August 21, 2003 (Exhibit A-12), show an unresolved conflict as to whether an orthopedic referral should be made with the last note (Exhibit A-12) indicating that a consult would take place. However, if that referral was made and if so, what the results were, is not in the record. Again, taking Plaintiff's version of the facts as true for purposes of this motion, the Defendants did not follow their own recommendations for an orthopedic referral, and Plaintiff's continued complaints of pain and immobility were simply ignored.

Thus, the undersigned is of the opinion that genuine issues of material fact exist, and therefore, it is recommended that Defendants' motion for summary judgment (doc. 43) be **DENIED**, and this matter remanded to the undersigned for further proceedings.

**IN CHAMBERS** at Gainesville, Florida, this **13th** day of July, 2005.

                                      **s/ A. KORNBLUM**
                                      **ALLAN KORNBLUM**
                                      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.