**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**RAYMOND LATSON,**

             **Plaintiff,**

**vs.**                                                    **1:03CV148-SPM/AK**

**NURSE HAGAN, et al,**

             **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 and is proceeding *pro se*

and *in forma pauperis*.  In his third amended complaint, Plaintiff alleges that Defendant

Menefee and others were deliberately indifferent to his medical needs.  (Doc. 27).

Defendant Menefee has moved for summary judgment (doc. 82), with supporting

materials (docs. 83 and 84), and Plaintiff has responded.  (Doc. 89).

Also before the Court is Plaintiff's motion for summary judgment (doc. 101), and

the responses of Defendant Menefee (docs. 102 and 103), and Defendants Rudolf,

Hagan and Hughes.  (Doc. 105).

The Court previously denied the motion for summary judgment filed by

Defendants Rudolf, Hagan and Hughes (doc. 43) in large part because there were no

medical records from NFRC which would have shed light on Plaintiff's claim that he was

treated by Defendant Menefee at NFRC, whom Plaintiff alleged ordered that he see an

orthopedic specialist.  Without these records, there remained a genuine issue of
material fact as to whether the medical staff at Washington CI, ignored Menefee's
discharge orders for an orthopedic evaluation and additional x-rays as Plaintiff claimed.
As the Court stated in its recommendation:

> If Plaintiff's version of the facts is accepted as true, which they must be for
> purposes of deciding Defendants' motion, then he had severely damaged
> his knee while at NFRC and no x-rays or other objective tests were made
> by Defendant Menefee or by the staff at Washington CI, despite his
> complaints of pain, and the staff's observations of swelling, decreased
> range of motion, and other symptoms.  Defendants have not offered any
> proof of treatment at NFRC nor proof of  x-rays or other objective tests by
> the staff at Washington CI that would show that they were not deliberately
> indifferent to Plaintiff's complaints of injury to his knee.  (Doc.60, pp.7-8)

Submitted with Defendant Menefee's motion are the treatment notes from NFRC, which
do not include any orders for evaluation by an orthopedic specialist and the x-ray report
which shows no abnormalities.  This evidence directly refutes Plaintiff's claim that
Menefee ordered an orthopedic evaluation and Plaintiff's claim that no x-rays were
taken.  Also, attached to Menefee's motion is his affidavit which explains that it was not
within his job description to order, arrange or follow up with Washington CI for any
further treatment of Plaintiff.  This refutes Plaintiff's claim that the medical staff at
Washington CI ignored Menefee's orders for an orthopedic evaluation and did not
obtain x-rays to determine the nature of Plaintiff's injured knee.

In short, Defendant Menefee's evidentiary submission not only refutes the claims
made by Plaintiff against him, but also his claims against the remaining Defendants
Rudolf, Hagan and Hughes.  Further, Plaintiff filed a motion for summary judgment and
attached sick call requests and grievances which provide an even more complete
picture of the facts and provide additional evidentiary support for granting summary

judgment not to him, but to Defendants Rudolf, Hagan and Hughes.  As will be more fully set forth below, it is the recommendation of the undersigned that Defendant Menefee's motion for summary judgment be granted, and that the remaining claims against Defendants Rudolf, Hagan and Hughes be dismissed.

## I.      Allegations of the Third Amended Complaint (doc. 27)

Plaintiff claims that on May 3, 2003, he injured his left knee and ankle playing football at North Florida Reception Center and went immediately to the emergency room where he alleges Defendant Menefee examined him, ordered x-rays, and determined that he would need to see an orthopedic specialist.  Instead, Plaintiff says he was transferred to Washington CI, where he was unattended for four to five weeks, although he contends that he submitted several sick call requests to Janice Spann.  Finally, Plaintiff claims he was examined by Defendant Lance Hughes, who told him there was no orthopedic specialist there to examine him, and he would have to submit another sick call to Janice Spann.  Plaintiff claims that he submitted several sick call requests to Defendant Hughes, Hagan and Rudolph, but no one responded.  Plaintiff claims that he filed grievances and appealed them to the highest level and was finally sent to RMC to meet with the specialist, but was returned to Washington CI without seeing one.

## II.     Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317,

322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998), quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

4

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

### III.    Defendant Menefee's Rule 56(e) evidence

a)    <u>Affidavit of Michael Menefee (doc. 84)</u>

At the time of the events set forth in the complaint, Menefee was a contract emergency room physican for Annashae corporation, which provided medical services for the DOC at North Florida Reception Center (NFRC) at Lake Butler, Florida.  He provided emergency treatment to inmates which generally consisted of assessing them to determine if they should be hospitalized or transferred to anthoer medical facility.  If neither hospitalzation or transfer was necessary, he provided necessary treatment at the ER and discharged the inmate with any necessary orders for medication, restriction of activity, or follow up treamtent.  He did not provide any follow up treatment nor did he ensure that his discharge orders were implemented.  He treated Plaintiff on May 25, 2003, for his left knee injury reportedly sustained playing football.  He treated Plaintiff on this one instance and for his left knee only.  Menefee states that there were no other complaints, including no report of left ankle pain.  He has attached his treatment records to support his findings of left knee contusion with possible ligamentus injury.  An x-ray was taken at that time which showed no bone or joint abnormality consistent with Menefee's examination and assessment.  Menefee ordered use of an ace bandage and crutches, and instructed Plaintiff to ice his knee for swelling and to tak Motrin for pain.  He also ordered Plaintiff to follow-up sick call on May 27, 2003, so that another

5

physician could assess any additional treatment needs, including an MRI or orthopedic evaluation.  Menefee had no further contact with Plaintiff and took part in no decisions regarding any treatment thereafter.

     b)     <u>Emergency Grievance dated June 7, 2003</u>

On 6-4-3 I was returned to this inst. without proper health care i.e.; left knee, left ankle.  I have increased pain, swelling in these areas .  On repeated requests to receive the health care by law I am entitled to.  I have not only be flat out refused by the dept. of corr. I have been denied and/or delayed.  This problem has cause damage that may or may not be repaired with the medical dept., on going delay, and substander care.  It can only be termed as, "hurry up & wait" It is my opinion that had I been on the outside, I would have had the MRI's and or surgery that law states I am entitled to.  It's the hope of this grievance that relief is done with all do speed.


NOT ACCEPTED AS AN EMERGENCY.
Before you can get treatment at all, you have to sign up for sick call.  The nurse will evaluate you and she/he will determine if you need to see the doctor.  If she thinks you need to see the doctor, she will make you an appointment.  The doctor will see you and determine if you need to go to NFRC or you can be treated here.  A grievance will not get you treatment as fast as signing up for sick call.
Therefore, your grievance is denied.


     c)     <u>Grievance to Secretary dated June 10, 2003</u>

On 05/25/03 and 06/10/03 I had sustained an injury to my (l) knee and (l) ankle, after repeated requests for medical treatment I have been refused, denied, and delayed.  This has cause pain & swelling to the point I can't feel my (l) leg.  I have been to sick-call, the E.R. and still the problem has not been taking care of.  Repeated request to and at the inst. level has been refused and/or delayed.  So now this appeal goes to your office.


Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not

provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

d)   Grievance to Secretary dated June 17, 2003

The foregoing is submitted in regards to my (l) knee & (l) ankle I have injured myself while at NFRC on May 24.  I have continued swelling and pain to the point I can not apply any pressure on that area.  I feel as though I am walking on glass.  Repeated requests for (1) a MRI, or at least to see an ortho doctor have been denied.  I have appealed to the office of the warden and the office of the C.H.O. or this institution.  Now I appeal to this office for help.  (Dated 6/17/03)

Your request for administrative appeal has been received in non-compliance.  This office has previously addressed this issue in appeal log #03-617701.  We will not redress the issue or your allegations, as there is no provision in the grievance process to appeal a decision already rendered by this office. (Dated 6/26/03)

**IV.   Deliberate Indifference**

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001).  The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).  This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency."  Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); see also Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).  An objectively serious

7

deprivation requires (1) showing an objectively "serious medical need." <u>Estelle</u>, 429 U.S. at 104.  A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

    To show the required subjective intent to punish the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." <u>Estelle</u>, 429 U.S. at 105.  This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." <u>Farmer</u>, 511 U.S. at 837.  In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  <u>Taylor</u>, 221 F.3d at 1258.

    a)    <u>Claims against Menefee</u>

    Defendant Menefee argues that Plaintiff's soft tissue knee injury did not present a risk of serious harm, but the undersigned disagrees with him on this issue.  His own treatment notes indicate that Plaintiff may have ligament damage as well, but even if he only strained his knee the undersigned is of the lay opinion that such an injury could result in serious harm if left unattended.  That is, if Plaintiff did not have the knee wrapped, stabilized and use crutches, he might have further injured his knee requiring surgery or resulting in permanent problems.  <u>See</u>  <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003); <u>Hill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1187 (11th Cir. 1994) (a serious medical need is considered "one that has been diagnosed by

a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

However, the undersigned is of the ultimate opinion that Defendant Menefee did not show deliberate indifference to Plaintiff's needs because Plaintiff's complaints about his treatment concern follow-up care over which Defendant Menefee was not responsible.  As he explains in his affidavit, Defendant Menefee was the ER physician assigned to handle immediate treatment needs, which the medical evidence from NFRC establishes he did.  He examined Plaintiff immediately following the injury, ordered x-rays which showed no fractures or other abnormality, he wrapped the knee, obtained crutches, prescribed pain medication, and determined that Plaintiff could be released with instructions to obtain follow up care at the institution.  It was unclear from the complaint what Defendant Menefee's role in his treatment was and there were no medical records from NFRC to aid the Court's understanding of the facts concerning Menefee in the medical records submitted earlier by the other Defendants. (See Doc. 43).  Plaintiff claims in his complaint that Menefee ordered an orthopedic consult, which the other Defendants ignored, but Plaintiff has offered no evidence of this and the medical treatment note submitted by Menefee refutes this.  According to Menefee's affidavit he did not have the responsibility of Plaintiff's follow-up care or the authority to direct the institution to take him to an orthopedic specialist.

Plaintiff's only response to the present motion is that Menefee's motion is untimely.  (Doc.  89).  However, Menefee was given no deadline for filing dispositive motions.  Plaintiff has offered no evidentiary materials to contradict Menefee's affidavit and the medical record showing his treatment of Plaintiff's left knee, and without

9

contradictory materials, the Court finds that there are no material facts in dispute about Menefee's responsibilities, as set forth in the affidavit, and the medical treatment provided, as shown in the medical record attached to the affidavit.  Thus, having reviewed the records and the affidavit, it is clear to the Court that Plaintiff has failed to state a claim against Defendant Menefee.

      b)     <u>Claims against Defendants Rudolf, Hagan and Hughes</u>

As the records submitted by Defendant Menefee show, Plaintiff suffered an injury to his left knee on May 25, 2003, and was brought immediately to Defendant Menefee for treatment at NFRC.  There are no complaints in the Emergency Room Records about an ankle injury.  An examination was conducted, an x-ray was taken, and it was determined to be a soft tissue injury only.  The knee was wrapped in ace bandage, he was told to use crutches, and ice it.  Defendant Menefee also prescribed Motrin for pain and suggested a follow up with sick call on May 27, 2003.

From the evidence submitted by Plaintiff, as set forth below, and the medical records submitted by Defendants Rudolf, Hagan, and Hughes with their motion for summary judgment (doc. 43), Plaintiff did not request sick call when he arrived at Washington CI, he submitted a grievance complaining about his knee.  (<u>See</u> Grievance dated June 7, 2003).  He was told he need only file a sick call request and he would be treated.  On June 10, 2003, he declared a medical emergency because he fell and twisted his ankle in the dorm, but was belligerent so he was not treated, but Defendant Hagan noted that he had a doctor's appointment on June 12, 2003, anyway.  (<u>See</u> Medical Records summary in Doc. 60, p.p. 4-5).  Hughes treated him on June 12, 2003, and found his knee to be swollen with decreased range of motion.  He noted that

Plaintiff was using crutches he brought with him from NFRC, but he re-issued some that

fit him better, gave him some more ace bandages and an extra pillow for his ankle.

Over the next two months, it appears from comparing the grievances (see below) to the

medical records (see doc. 60), that Plaintiff kept filing grievances rather than sick call

requests which resulted in confusion and some minor delay in his treatment, but his

knee and ankle were examined and either x-rays taken or perhaps x-rays obtained from

NFRC, this point is not clear, but Plaintiff was seen on June 12, June 16, and on August

1, 2003, the Chief Health Officer determined that no orthopedic consult was necessary.

(Doc. 60, p. 5).  On August 14, 2003, some unspecified incident resulted in another note

to have an orthopedic consultation, but on August 19, 2003, the consult was denied

because there had been no new injury to the knee.  (Doc. 60, p. 5).

        As the history reveals, Plaintiff did not arrive at Washington CI with doctor's

orders to have an orthopedic evaluation.  The x-rays taken by Defendant Menefee had

shown no fractures or other abnormalities and his knee injury was deemed to be soft

tissue strain for which he was given ace bandages, crutches, and an anti-inflammatory

medication for pain and swelling.  This treatment was continued by Defendant Hughes

when he saw Plaintiff a few days after his arrival at Washington CI.  There is nothing in

these facts that would show any deliberate indifference by the named Defendants, and

it appears from the grievances set out below and the responses thereto, that any delays

were occasioned by Plaintiff's failure to file sick call requests.  Despite his claim that he

filed numerous sick call requests, he has provided only two.  Thus, it is the opinion of

the undersigned that submission of the evidentiary materials by Defendant Menefee, as

well as the material submitted with Plaintiff's motion for summary judgment, show the

11

entire history of Plaintiff's medical treatment of his left knee and ankle and does not

support a claim of deliberate indifference.

## V.      Exhaustion

It is also evident that Plaintiff has not exhausted his claims against Menefee

within the meaning of the PLRA, 42 U.S.C. § 1997e(a).  He did not mention Menefee

and only vaguely asserted that he did not get proper care for his left knee and ankle at

NFRC, but the remainder of his complaints concern his care at the institution.  Since the

purpose of the grievance system is to put the institution on notice of the issues to be

resolved so that they have an opportunity to address those issues, Plaintiff's grievances

did not provide any information that would have led the institution to surmise that

Menefee failed to treat Plaintiff at NFRC.  See Brown v. Sikes, 212 F.3d 1205, 1207-08

(11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant

information reasonably available to him" ).  Thus, Plaintiff has also failed to exhaust his

administrative remedies with regard to his claims against Defendant Menefee.

## V.      Plaintiff's Motion for Summary Judgment (doc. 101)

Plaintiff argues that he should have had an incident report prepared when he

injured his knee and ankle and that Menefee should have followed up on his order for

an orthopedic consultation.

### a)      Inmate Sick Call Requests

A request dated June 25, 2003, indicates that Plaintiff needs information on  the

status of his leg and whether he has an appointment with an orthopedist.  He states that

he is still having problems with his left knee and ankle and can hardly walk.  There is no

12

response on the form.  Attached to the request is his inmate account statement showing

medical co-pays incurred on June 9, 10, 11, and 30.

Another request dated July 6, 2003, states "I am still having problems with my (L)

knee and (L) ankle swelling and pain. 'Could you please put me in to see Dr. Spann.'"

The notation on the bottom says "Already scheduled for x-ray [indecipherable] Thursday

and f-u after x-ray."

    b)   <u>Grievances</u>

On 6-4-3 I was returned to this inst. without proper health care i.e.; left
knee, left ankle.  I have increased pain, swelling in these areas .  On
repeated requests to receive the health care by law I am entitled to.  I
have not only be flat out refused by the dept. of corr. I have been denied
and/or delayed.  This problem has cause damage that may or may not be
repaired with the medical dept., on going delay, and substander [sic] care.
It can only be termed as, "hurry up & wait" It is my opinion that had I been
on the outside, I would have had the MRI's and or surgery that law states I
am entitled to.  It's the hope of this grievance that relief is done with all do
speed.  (Dated 6/7/03)


NOT ACCEPTED AS AN EMERGENCY.
Before you can get treatment at all, you have to sign up for sick call.  The
nurse will evaluate you and she/he will determine if you need to see the
doctor.  If she thinks you need to see the doctor, she will make you an
appointment.  The doctor will see you and determine if you need to go to
NFRC or you can be treated here.  A grievance will not get you treatment
as fast as signing up for sick call.
Therefore, your grievance is denied.  (Dated 6/20/03)


                             ***

On 6/10/03 at approx. 10:30 a.m., I had slipped in the bathroom to
[indecipherable] involved my (L) knee & (L) ankle.  While I had declared a
medical emergency, I was refused treatment by Nurse Hagen.  She stated
to me "I will not treat you" as per Chpt.33. F-A-C I had the right to be
treated.  I am in pain.  I can't move my leg.  I feel that this will only
compound my injury.  (Dated 6/10/03).

According to the Nursing Supervisor, you were argumentative and also refused to have your vital signs taken.  The emergency also was not life threatening.  You were already scheduled to be seen by Mr. Hughes and you were seen by Mr. Hughes on 6/16/03 and treated.  Therefore, your grievance was denied.  (Dated 6/27/03 and signed by J. Spann).

***

On 05/25/03 and 06/10/03 I had sustained an injury to my (l) knee and (l) ankle, after repeated requests for medical treatment I have been refused, denied, and delayed.  This has cause pain & swelling to the point I can't feel my (l) leg.  I have been to sick-call, the E.R. and still the problem has not been taking care of.  Repeated request to and at the inst. level has been refused and/or delayed.  So now this appeal goes to your office.  (Dated 6/10/03)

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules. (Dated 6/26/03)

***

The foregoing is submitted in regards to the treatment I am receiving for my (L) knee & (L) ankle .  I am still in a great amount of pain, there is still continued swelling.  I believe the treatment plan is not the right one.  I object to the fact that this has been untreated for over 3 weeks with no M-R-I completed as of date.  I feel that I should be seen by the orto-doctor [sic] ASAP.  (Dated 6/16/03)

You were seen on the same date you wrote this grievance by Mr. Hughes.  Had he thought you needed something more he would have scheduled you to see the doctor.  You do not get an MRI just because you request one.  Sign up for sick all if you need to.  (Dated 6/20/03)

***

The foregoing is submitted in regards to my (l) knee & (l) ankle I have injured myself while at NFRC on May 24.  I have continued swelling and pain to the point I can not apply any pressure on that area.  I feel as though I am walking on glass.  Repeated requests for (1) a MRI, or at least to see an ortho doctor have been denied.  I have appealed to the office of the warden and the office of the C.H.O. or this institution.  Now I appeal to this office for help.  (Dated 6/17/03)

14

Your request for administrative appeal has been received in non-compliance.  This office has previously addressed this issue in appeal log #03-617701.  We will not redress the issue or your allegations, as there is no provision in the grievance process to appeal a decision already rendered by this office. (Dated 6/26/03)

***

This is submitted in response to the informal grievance.  I disagree in two parts. (1) as the respondent stated "Mr. Hughes would have put me in to see the doctor" therefore he is not qualified to make a determination as to enter tears.  And x-ray would only show breaks, and not all breaks if intact there is one so do it to assume that I am in pain and there is swelling for no reason at all.  Last, as plainly stated only a orto-doctor can and should make the final determination.  (Dated 6/23/03).

As I stated in your Informal Grievance, Mr. Hughes is quite qualified to determine if you need to see a doctor.  If he thinks, you should , he will have you an appointment made to see Dr. Spann or Dr. Ciungu.  If you get to see the doctor they will determine if you need to be sent out or not.  You do not get an MRI just because you request one.  If you need medical attention, you may sign up for sick call as procedures require.  (Dated 7/11/03)

***

I submit this in regards to the responses received.  First and foremost I disagree with the conclusions reached.  I have been through the procedures of inmate health care, i.e. sick call, I have submitted informal as well as formal grievance now in accordance with 42 U.S.C. §1983, §1997(e) which requires exhaustion of admin. remedies.  I submit to your office this appeal.  I am having problems with my (L) knee and ankle to wit there is swelling and pain.  I was due for surgery for a torn anterior cruciate ligament (a-c-l-) and have yet to receive this treatment or any related treatment as of date.  (Dated 7/23/03)

You have been evaluated by Mr. Hughes and you are scheduled to see him again in early August.  As your informal grievance stated, you do not get an MRI just because you request one.  The only way you will get this exam is for Mr. Hughes to request Dr. Spann to request you a consultation to NFRC and the she has to agree that she thinks it is medically necessary.  If you need medical attention, you may sign up for sick call. (Dated 8/8/03)

***

15

The following is submitted in accordance with 33.103.002 (9)(13) 6 (H) I believe I am being denied medical treatments by this institution because of my pending lawsuit against the C-H-O and the P.A. at this institution. As now I can't get seen and or even allowed to attend sick-call. Nor am I receiving pain meds for my (L) knee. Medical will not see me, I'm being [threatened (?)] by security. The reason I [?] pass the informal step is I feel my life is in danger as well as my health. (Dated 12/17/03)

Plaintiff did not attach the response to this grievance.

*** 

The foregoing is sent in regards to the response. As records would indicate I have been to sick-call at least 4 times for this problem. I am still having this problem, as I stated and will restate only an M-R-I could tell the type of damage that I know is done. Only a orto-doctor who is trained in that field could make the call as to treatment or surgery not the P.A. Mr. Huges who seen me this is not his field of medicine. (Dated 6/27/03)

It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing. Specialty consults are order by your Chief Health Officer when in his/her judgment a medical need is presented.

You had x-rays on 7/22/03 and went to the Reception and Medical Center in May. You are being treated by Dr. Spann at this time. (Dated August 15, 2003).

*** 

The following is sent for review. I disagree with the response as it doesn't give a clear reason for the denial of the grievance nor does it provide why the medical reason would disallow me something that is preferable to my health. (Dated 12/29/03)

Sign up for sick call and get evaluated...grievance denied. (Dated 2/17/04)

*** 

In accordance with 33.103.002 (4)((0(13) I have been returned to this institution in pain. I can hardly apply pressure to my (L) knee. I have made all attempts to gain proper access to medical treatment. The reason for bypassing routine procedures is that the time frame it would to get

treatment I need would most likely cause me more harm to that knee. (Dated 12/17/03)

If you are in need of medical attention, you need to sign up for sick call. (Dated 2/19/04)

***

This is submitted in regards to my (L) knee.  I am having a hard time walking and I am having a great amount of pain.  I have repeatedly addressed this request through routine chain, i.e. sick-call, informal grievances, formal grievances as preoffered I am in a great amount of pain (Dated 12/11/03)

You have only been seen one time in Medical since August 2003, when Dr. Spann saw you.  If you need medical attention, you need to sign up for sick call.  (Dated 2/7/04)

***

The following is submitted in regards to my (L) knee as I am still having a great difficulty walking and or applying pressure to this area.  I have been to sick-call numerable times.  I have seen a specialist [indecipherable] as I stated before and I am still having problems in this area.  Every time I submit paperwork on this issue I get the same boilerplate response to go to sick-call [indecipherable] this problem needs to be addressed once and for all.  (Dated 12/7/03)

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

Upon receipt of this response if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance procedure.  (Dated 12/15/03)

***

I disagree with the following sick-call charges [numbers too faint to decipher] I have been charged for those visit.  However, they were in conjunction with a preexisting problem.  I believe the rule state if the visits

17

are in conjunction with a pre existing illness there should not be a charge the inmate will not be charged.  (Dated 8/4/03)

You initiated the sick call on those dates and were charged appropriately. Had we called you out you would not have been charged.  You elected to sign up for sick call on 6/5/03, 6/6/03, and 7/25/03 and were charged. Charges appropriate.  (Dated 8/20/03)

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant

Menefee's motion for summary judgment (doc. 82) be **GRANTED**, and further that all of

Plaintiff's claims be **DISMISSED** for failure to state a claim upon which relief may be

granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and

recommendation direct the clerk of court to note on the docket that this cause was

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this  24th  Day of July, 2006.


**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

18